UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA,**

**v.**                                                    **CRIMINAL NO. 2:19cr194**

**LARRY G. CHILDERS,**

       **Defendant.**

## OPINION

This matter comes before the court on the Defendant's appeal of his conviction for violating 16 U.S.C. § 704(b)(1), following a bench trial held before Magistrate Judge Robert J. Krask on December 4, 2019. ECF No. 1. For the reasons below, the Defendant's conviction is **AFFIRMED**.

### I. Procedural History

On December 4, 2019, following a bench trial, the Defendant was convicted of Hunting Over a Baited Area, in violation of 16 U.S.C. § 704(b)(1). See Judgment, ECF No. 1-5. The Defendant filed a Notice of Appeal on December 18, 2019. ECF No. 1. The Defendant filed a Statement of Issues and Memorandum in Support ("Def. Br.") on February 19, 2020. ECF No. 8. The United States filed a Brief in opposition ("Gov. Br.") on March 9, 2020. ECF No. 10. The Defendant filed a Reply on April 8, 2020. ECF No. 11.

## II. Standard of Review

A decision of a magistrate judge is reviewed on appeal to the district court using the same standard of review as an appeal from a district court to a circuit court. See Fed. R. Crim. P. 58(g)(2)(D); United States v. Bursey, 416 F.3d 301, 305 (4th Cir. 2005). On appeal, "[f]indings of fact made by the trial court are reviewed for clear error, and issues of law . . . are reviewed de novo." Id. at 306.

On appeal, the Defendant argues that there were insufficient facts to convict him of the offense. Def. Br. at 1. In a challenge to the sufficiency of the evidence, courts assess the evidence, "including all reasonable inferences to be drawn therefrom[,] in the light most favorable to the Government." Bursey, 416 F.3d at 306. The court "must sustain the fact finder's verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (internal quotations omitted).

## III. Facts

The following facts were established at the hearing before the magistrate judge.[1] On December 22, 2018, Charles Leftwich, a Conservation Police Officer, informed Officer Zachary Howlett

---

[1] At the hearing, the court heard testimony from Conservation Police Officer Zachary R. Howlett, of the Virginia Department of Game and Inland Fisheries, and Special Agent Christopher L. Mena, of the United States Fish and Wildlife Service.

about an area of Gordon Creek containing corn and milo.[2] Officer Leftwich provided Officer Howlett with a GPS location indicating where Officer Leftwich had observed the corn and milo in Gordon Creek.

On December 23, 2018, Officer Howlett visited Gordon Creek. Gordon Creek is located off of the Chickahominy River in James City County, Virginia, near the city of Williamsburg, Virginia. The closest road to the relevant area of Gordon Creek is Westport Road, which is located in a residential neighborhood called Westport. See Gov. Ex. 1 (map of relevant area). At the entrance to Westport, Officer Howlett observed a "no trespassing" sign. Officer Howlett then found an entrance to Gordon Creek through an access road. There was a parking lot near the access road. Although some hunting clubs own property on Gordon Creek, this area of Gordon Creek was located on private property and was not owned by a hunting club.

Officer Howlett walked down onto the marsh. He found the GPS point that Officer Leftwich had provided to him. In the marsh, Officer Howlett saw a "noticeable amount" of corn and milo floating on the surface of the water. Hr'g Tr. 13:7-8; see Gov. Ex. 2 (picture of surface of the water on December 23). The corn and

---

[2] Corn and milo are grains often used as bait for duck hunting. See Hr'g Tr. 14:4-10.

milo were "clearly visible" to him. Hr'g Tr. 13:11-13. Officer Howlett also observed ducks congregating near the corn and milo.

On December 26, Officer Howlett returned to the area. He placed a security camera at the entrance to the parking lot near the access road. He also placed a security camera in the marsh where he had observed the corn and milo. Moreover, a security camera was already set up at the entrance to the Westport neighborhood.

The next day, December 27, at about 10:00 A.M., the cameras set by Officer Howlett captured the Defendant, Mr. Childers, and his son, drive into the parking lot near the area Officer Howlett had been monitoring. The Defendant and his son then walked down to Gordon Creek. They stayed at Gordon Creek for approximately ten (10) minutes before returning to their car and departing.

Officer Howlett returned to Gordon Creek on January 18, 2019. He observed a "heavy amount of [m]ilo at the same area . . . It looked like it had been replenished or restocked in that same area." Hr'g Tr. 29:9-13. See Gov. Ex. 3 (picture of the water surface on January 18). The next morning, January 19, Officer Howlett returned at around 5:45 A.M. He positioned himself so he could observe the marsh. At approximately 6:37 A.M., Officer Howlett saw a boat come up the creek. The boat dropped two individuals on the shoreline directly in front of him. Officer Howlett observed a number of ducks fly out of the water when the

4

boat drove up to where he was located. The driver of the boat then stopped the boat and joined the other two individuals. See Gov. Ex. 4 (picture of relevant portion of Gordon Creek).

Officer Howlett heard shots at 6:56 A.M. and 7:14 A.M. He did not hear any duck or goose calls. He also did not see any decoys placed on the water. Officer Howlett testified that, in his experience as a law enforcement officer of approximately three years with the Virginia Department of Game and Inland Fisheries, this occasion was the "first time that I have ever checked anybody that hasn't had decoys out." Hr'g Tr. 33:14-18.

At 8:10 A.M., Officer Howlett made contact with the three hunters. The Defendant told Officer Howlett that they shot two birds that morning. See Gov. Ex. 7 (picture of birds). The Defendant also stated that they had "hunted [the area] before and that they walked from a private ramp." Hr'g Tr. 36:11-14.

Officer Howlett conducted a compliance and license check. He determined that the three individuals were Larry Childers, Mr. Childers's son, and a friend of Mr. Childers's son. While he was conducting the compliance check, Officer Howlett could "see [m]ilo at the base of the boat in the water right at my feet." Hr'g Tr. 35:20-21. See Gov. Ex. 5 (picture of water on January 19); Gov. Ex. 6 (chain of custody of bait recovered on January 19).

Officer Howlett then informed the three individuals that they were hunting over a baited area. The Defendant "kind of gave a

flabbergasted look on his face." Hr'g Tr. 36:15-16. The Defendant then "stated that the individual that put the bait out was not hunting with them." Id. 36:17-18. According to Officer Howlett, "Mr. Childers made the acknowledgement that he knew the bait was there, but also commented that since he did not put the bait out, that they were good to hunt the area." Id. 36:21-23. Officer Howlett then asked the other two individuals whether they knew the area was baited, and Mr. Childers responded that they did not. The Defendant then stated that he believed the area had been baited during the "split."[3] According to Officer Howlett, the split occurred from approximately December 2, 2018 to December 19, 2018. Hr'g Tr. 38:10-11.

Two days later, Officer Howlett contacted Officer Christopher L. Mena, a Special Agent with the United States Fish and Wildlife Service, regarding the matter. On February 5, 2019, Officers Mena and Howlett went to the Defendant's home to interview him. The Defendant lives in Seaford, Virginia, which is an approximately thirty (30) minute drive from Williamsburg, Virginia. While walking in the Defendant's driveway, the officers observed empty bags of shelled corn in the backseat of a car parked in the driveway. See Gov. Ex. 8 (picture of bags).

---

[3] The "split" is a period between phases of duck hunting season in which duck hunting is not permitted. Hr'g Tr. 38:5-7.

Officers Howlett and Mena spoke to the Defendant about the events of January 19. Officer Mena testified that "[w]hen asked about the incident, Mr. Childers stated that he was aware that someone had put bait out in the area during the split in the season." Hr'g Tr. 92:17-19. Furthermore, Officer Mena testified that the Defendant acknowledged the area could "have been easily inspected but he [the Defendant] chose not to" do so. Hr'g Tr. 93:16-18. The Defendant did, however, deny knowing that the area was baited on January 19. Finally, the Defendant told the officers that he has been an "avid hunter" for forty-three (43) years and that he had hunted in the general area of Gordon Creek several times before. Id. 95:7-13.

### IV. Analysis

These facts are sufficient to sustain the Defendant's conviction. The statute prohibits "tak[ing] any migratory game bird by the aid of baiting, or on or over any baited area, if the person knows or reasonably should know that the area is a baited area." 16 U.S.C. § 704(b)(1). The Defendant stipulated, and the Magistrate Judge found, that the birds he shot were migratory birds covered by the statute. Hr'g Tr. 37:11-13, 122:5-8. In addition, the Defendant does not dispute that there was bait in the area on January 19. Id. 122:11-13. Therefore, the question presented is whether the Defendant knew or reasonably should have known that the area was baited.

Several pieces of evidence establish the Defendant knew, or should have known, that there was bait in the area where he was hunting. First, the Defendant admitted to Officer Howlett that he knew the area was baited. On January 19, the Defendant "made the acknowledgement that he knew the bait was there, but also commented that since he did not put the bait out, that they were good to hunt the area." Hr'g Tr. 36:21-23. The Magistrate Judge credited Officer Howlett's testimony on this point. Hr'g Tr. 125:1-8.

The Defendant's response to this admission is unpersuasive. The Defendant calls Officer Howlett's testimony regarding the admission "ambiguous and conclusory." Def. Reply at 3. According to the Defendant, "acknowledgement of his knowledge that there was bait in the area refers to the belief that bait was placed during the split season and, arguably, when he came in to inspect the Creek on December 27, 2018." Id. at 4-5.

This explanation is not convincing. The Defendant did tell Officer Howlett and Officer Mena that he believed the area had been baited during the split. The Defendant, however, also told Officer Howlett that he "knew the bait was there, but . . . commented that since he did not put the bait out, that they were good to hunt in that area." Hr'g Tr. 36:21-23. This admission is consistent with the Defendant's belief that the area had been baited during the split. The fact that the Defendant believed the area had been baited during the split is not a reason to disbelieve

8

his other statement on January 19 that he knew the area was baited on that day. Importantly, that the Defendant himself did not put the bait there is irrelevant and not dispositive of the issue. The standard is whether the Defendant knew or reasonably should have known that the area was a baited area. 16 U.S.C. § 704(b)(1).[4]

The Defendant also attempts to rely on his later statement to the officers that he did not know the area was baited. Def. Br. at 3. This is an after-the-fact statement, different from the Defendant's admission on January 19 that he knew the area was baited. Even if it were credible, however, the Defendant still admitted that he knew bait had been placed in the area during the split. This was a reason to check on January 19, the day he was hunting, whether the area was still baited. Thus, even under the Defendant's version of events, he had a reason to check the water when he was hunting to see if the area was baited.

Second, there are other reasons the Defendant should have known the area was baited on that day. In particular, the Defendant was an experienced hunter who had previously hunted that specific

---

[4] The court notes that prior regulation did not contain any knowledge requirement, just the presence of bait. See United States v. Chandler, 753 F.2d 360, 363 (4th Cir. 1985). In Chandler, the Fourth Circuit stated, "[v]iolating the regulation by shooting over a baited area requires no proof of a connection of the offender with the bait; a hunter is strictly liable for shooting on or over a baited area. Therefore, the only issue is whether the appellants were shooting on or over a baited area." Id. (citation omitted).

9

area of Gordon Creek. Moreover, the Defendant visited that area on December 27, 2018, and likely saw the area was baited. The Defendant attempts to address his prior visit to Gordon Creek on December 27 by noting that this was twenty-three (23) days before he was hunting on January 19. Def. Reply at 5. The Defendant argues that he acted "like a reasonable hunter under the circumstances" by waiting twenty-three (23) days "for the bait to be removed from the area or dissipated by several factors." Id. This response is unpersuasive. At a minimum, the presence of bait in the area on December 27 is a reason the Defendant should have checked the area for bait on January 19. Even if it was reasonable for the Defendant to assume the bait would naturally dissipate, the fact that the Defendant knew someone baited the area during the split is a reason the Defendant should have checked to see if someone had baited the area again.

Third, the area in which the Defendant hunted was in fact baited on January 19. Officer Howlett testified that on January 19, "I could look down and standing right next to the boat and see [m]ilo at the base of the boat in the water right at my feet." Hr'g Tr. 35:19-21. The Defendant attempts to argue that there is no reason he should have known the area was baited—despite it being visibly baited—because "[t]here is no evidence that at the time the shoots [sic] went off . . . the sun had risen or what the visibility was." Def. Reply at 4. The facts contradict this

speculative argument, because the Defendant admitted to the officers that the area could have been "easily inspected but he chose not to." Hr'g Tr. 93:17-18.

Fourth, the manner in which the Defendant hunted suggests that he knew the area was baited, or baited the area himself. The Defendant lived thirty (30) minutes from Gordon Creek. The area in which he was hunting is not a part of a hunting club, and the neighborhood had a "no trespassing" sign and a camera posted at the entrance. The Defendant did not use decoys to hunt, which Officer Howlett had never seen in his experience. There were no hunting blinds on this portion of Gordon Creek. Finally, Officers Howlett and Mena observed open bags of shelled corn in a car in the Defendant's driveway on February 5, when they interviewed the Defendant at his home. These facts certainly infer that the Defendant traveled by boat on January 19, 2019, to this portion of Gordon Creek to hunt because it was baited and that he may have in fact baited the area himself at some period beforehand.

## V. Conclusion

Viewing the evidence "in the light most favorable to the Government," Bursey, 416 F.3d at 306, the facts are sufficient for a "rational trier of fact" to find beyond a reasonable doubt that the essential elements of the crime were committed. Lomax, 293 F.3d at 705. The statute requires only that the Defendant knew or reasonably should have known "that the area is a baited area."

11

16 U.S.C. § 704(b)(1). The facts here are clearly sufficient to sustain the Defendant's conviction. Accordingly, the Defendant's conviction is **AFFIRMED**.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the Defendant, and the Assistant United States Attorney at Norfolk.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

Rebecca Beach Smith
Senior United States District Judge

May 13, 2020